UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES FEICK,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>STATE OF WASHINGTON;<br><br>WASHINGTON LIQUOR AND<br><br>CANNABIS BOARD LICENSING AND<br><br>REGULATION DIVISION; RICK GARZA;<br><br>WILLIAM LUKELA,<br><br>　　　　　　Defendant. | Case No. 3:24-cv-05603-TMC<br><br>ORDER GRANTING MOTION TO DISMISS |

## I.　INTRODUCTION

　　This case arises from pro se Plaintiff Charles Feick's ongoing litigation challenging the dissolution of the Green Harvest Company ("GHC"). Defendants are the State of Washington, the Washington State Liquor and Cannabis Board ("WSLCB"), its former Director Rick Garza, and its current Director William Lukela. Mr. Feick brings two claims under 42 U.S.C. § 1983 alleging that Defendants violated his due process and equal protection rights when they failed to investigate complaints he made against a GHC shareholder.

ORDER GRANTING MOTION TO DISMISS - 1

Defendants moved to dismiss all claims, arguing that (1) claims against the State of Washington and WSLCB are barred by the Eleventh Amendment; (2) claims against Garza and Lukela, in their official capacities, must be dismissed because they are not "persons" under Section 1983; (3) the three-year statute of limitations on all Section 1983 claims have passed; and (4) the complaint fails to state a claim for relief. Dkt. 21.

For the reasons explained below, the Court agrees with Defendants and GRANTS the motion to dismiss. Mr. Feick's claims are DISMISSED with prejudice.

## II.    BACKGROUND

### A.    Factual Background

The events giving rise to this dispute have been recounted several times in prior cases.[1] The Court, however, summarizes the relevant background here.

In October 2011, Mr. Feick incorporated GHC to "engage in the business activity and expectancy of producing and processing marijuana in the State of Washington" once it became legal in the state. Dkt. 20 ¶ 15. Two years later, Mr. Feick met Leopold ("Pat") Channing

---

[1] Defendants asks that the Court take judicial notice of the orders and procedural facts in three related cases: *Feick v. Brutsche Fam. Revocable Tr.*, Grays Harbor County Superior Court No. 18-2-00991-14; *Feick v. Brutsche Fam. Revocable Tr.*, 20 Wn. App. 2d 1058 (2022); and *Feick v. Brutsche Fam. Revocable Tr.*, No. 3:24-CV-05587-TMC, 2025 WL 1194160, at *1 (W.D. Wash. Apr. 24, 2025). Dkt. 21 at 2 n.1. Defendants note that Mr. Feick's amended complaint references the state court proceedings though it does not mention the related federal case. *Id.* But because the factual background in the federal case is relevant to the facts presented here, Defendants request that the Court also take judicial notice of the federal case. The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotations omitted). The Court may also consider a document not physically attached to the complaint if the parties do not contest its authenticity and the plaintiff necessarily relies on it. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Thus, while the Court takes the facts alleged in Mr. Feick's amended complaint as true and construes them in the light most favorable to Mr. Feick, it also takes notice of the court filings requested by Defendants. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

Brutsche, then-trustee for the Brutsche Family Revocable Trust (the "Trust"). *Id.* ¶ 18. Pat Brutsche provided "suggestions for Feick's industrial parcel development based on the current industrial zoned properties that the Trust own[ed]." *Id.* He also explained that he was the sole trustee for the Trust and made "all decisions for the investment, development, and rental of the commercial residential properties that are owned by the Trust." *Id.* The Trust along with other individual shareholders invested in GHC. *See id.* ¶ 20.

But over several years, "[d]espite substantial investment and loans from shareholders, Green Harvest was not profitable, was accumulating debt, and was not making payments on its obligations." *Feick v. Brutsche Fam. Revocable Tr.*, 20 Wn. App. 2d 1058, 1058 (2022). "None of the shareholders had received any return on their investments or payments on their loans." *Id.* "Eventually, several shareholders became concerned with Feick's management" of GHC since he kept requesting additional funds from shareholders and instructing vendors to seek payment directly from the Trust instead of GHC. *Id.*

In May 2017, WSLCB approved Mr. Feick, Pat Brutsche, and other investors as "GHC True Parties of Interest . . . for their financial contribution to GHC which included their GHC stock purchases defining their equity percent of ownership as GHC shareholders." *Id.* ¶ 20. On July 23, 2017, WSLCB activated GHC's license for marijuana production and processing operations in Washington state. Dkt. 20 ¶ 21. But the next day, Mr. Feick alleges that "Pat Brutsche, Martha Carr, and Michael Brutsche conduct[ed] an illegal ultra vires Board of Directors takeover of GHC[]" and "abandoned the GHC[] Business Plan that was approved by SEC, WA DFIS, WSLCB, and GHC[] Shareholders Agreements." *Id.*

In response, Mr. Feick filed a shareholder's derivative suit in Grays Harbor County Superior Court against six defendants, which included the Trust, Pat Brutsche, Michael Brutsche, Martha Carr, Charles Carr, and Creative Solutions Equipment. *Id.* ¶ 22. On March 27, 2019, the

ORDER GRANTING MOTION TO DISMISS - 3

Trust moved to dismiss and petitioned for the appointment of a general receiver. *Id.* ¶ 23. While the case was pending, Pat Brutsche, who was "WSLCB approved as True Party of Interest to hold equity shares in" GHC, died. *Id.* ¶ 24.

In June 2019, Steven Krohn replaced Pat Brutsche as "sole Trustee for Brutsche Family Revocable Trust," but Mr. Feick alleges that Krohn could not qualify as a True Party of Interest under the Washington license because he was a California resident. *Id.* ¶ 25. Specifically, Mr. Feick asserts that WAC 314-55-035 requires a "True Party of Interest" to have Washington residency, and the state court "relied upon false information presented by defense counsel that the defendants Brutsche Family Revocable Trust and new Trustee Steve Krohn had standing to be involved with the day-to-day licensed marijuana operations of the GHC." *Id.* ¶¶ 29, 30.

Between July 20, 2020 and August 23, 2020, Mr. Feick contacted the Attorney General's Office and WLSCB several times to inform them that Krohn was claiming in legal proceedings that he could serve as a Party of Interest despite living outside of Washington. *Id.* ¶¶ 35–39; *see, e.g., id.* ¶ 37 ("On July 21, 2020, Feick emailed WA AAG Joshua [] Rodriguez providing the background information of the death of Pat Brutsche who was the WSLCB approved true party of interest representing the Trust" and "pointed out the reluctant failure of the WSLCB Licensing and Regulation Division to review the compliance of the Trust and new sole Trustee Steve Krohn, a California resident[.]").

On August 24, 2020, WLSCB responded to Mr. Feick and informed him that a complaint had been filed and was assigned a case number. *Id.* ¶ 40. That same day, Mr. Feick received an email from WSLCB stating, "Thank You for your correspondence. I wanted to follow up and let you know I have been in receipt of all the documents you have sent forth and I am waiting until a decision is made through the courts. I hope you are also enjoying the sunshine." *Id.* ¶ 41. Mr. Feick asserts that this "decision was a deliberate, reckless, wanton violation of state and

ORDER GRANTING MOTION TO DISMISS - 4

federal law" and alleges that WSLCB "avoid[ed] the statutory responsibility . . . [by] deferring to the final court's decision." *Id*. "After numerous attempts on record to seek information and rulings by [WSLCB] regarding the standing of the Trust and California Trustee Steve Krohn, as true party of interest in GHC," Mr. Feick alleges that WSLCB "[c]ontinued to stall insisting on waiting for a court decision in the current litigation." *Id.* ¶ 42.

Having not received a "reviewable final action determining the true party of interest issue," on March 30, 2020, Mr. Feick filed a public records request with WSLCB seeking "all paper, digital, electronic, and meta applications, documents and records, including any and all electronic and written communications, emails, and DocuSign background check materials, submitted . . . to qualify Steve Krohn Trustee for the Brutsche Trust as True Party of Interest in the Green Harvest Corporation after the death of Pat Brutsche on April 17, 2019. *Id.* ¶ 44. Mr. Feick alleges that to date, he has not received any response to his request and the "WSLCB has absolutely failed to send a single document that shows that members of the Trust complied with the existing 2019 WSLCB I-502 Licensing and Regulation Legislation to qualify and determine that Steve Krohn, a resident of California State, was approved as a WSLCB True Party of Interest in GHC." *Id.* ¶ 45.

Mr. Feick brings two claims under 42 U.S.C. § 1983 alleging that Defendants violated his due process and equal protection rights when they failed to enforce the residency requirement against Krohn and allowed him to participate as a true party of interest in GHC. *See id.* ¶¶ 59–74. Mr. Feick seeks $2,215,500 in damages for violating his constitutional rights and causing emotional harm for the past six years. *Id.* ¶ 58.

**B.  Procedural Background**

Mr. Feick filed this lawsuit on July 25, 2024, and moved for leave to proceed *in forma pauperis* ("IFP"). Dkt. 1. U.S. Magistrate Judge Grady Leupold granted Mr. Feick's motion to

ORDER GRANTING MOTION TO DISMISS - 5

proceed IFP. Dkt. 4. During this time, Mr. Feick initiated another case related to the underlying facts, which this Court dismissed. *See Feick v. Brutsche Fam. Revocable Tr.*, No. 3:24-CV-05587-TMC, 2025 WL 1194160 (W.D. Wash. Apr. 24, 2025). Mr. Feick amended his complaint on September 23, 2024, and he moved to amend his complaint a second time on October 7, 2024. Dkt. 9; Dkt. 13. The Court granted Mr. Feick's motion, Dkt. 18, and his second amended complaint was filed on November 21, 2024, Dkt. 20. Defendants moved to dismiss all claims. Dkt. 21. Mr. Feick responded, Dkt. 25, and Defendants replied, Dkt. 27. Mr. Feick also filed a surreply. Dkt. 30. The motion is ripe for the Court's consideration.

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.      Rule 12(b)(1)**

A Rule 12(b)(1) motion seeks dismissal of a claim for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Such challenges may be either "facial" or "factual." "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* Where, as here, the Court responds to a facial attack, the Court will resolve the challenge "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

## IV.    DISCUSSION

**A.     The Court dismisses all federal constitutional claims against the State of Washington and WSLCB because they are barred by sovereign immunity.**

To the extent that Mr. Feick seeks relief against the State of Washington and WSLCB, those claims are barred by the Eleventh Amendment. *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016). "Longstanding Supreme Court precedent has interpreted this Amendment to immunize states from suit in federal court by citizens and noncitizens alike." *Kohn v. State Bar of California*, 87 F.4th 1021, 1025 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1465 (2024) (citing cases). Eleventh Amendment immunity extends to state agencies, which cannot be sued for damages or injunctive relief in federal court. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 (9th Cir. 2003) (citation omitted).

A state agency is not a person for purposes of Section 1983 and cannot be sued for constitutional violations unless it affirmatively waives its sovereign immunity. *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022). As Defendants correctly point out, the State of Washington has not waived sovereign immunity for claims under Section 1983. *See* Dkt. 21 at 8; *Rains v. State*, 100 Wn.2d 660, 667, 674 P.2d 165 (1983) ("[T]here is no express legislative indication that the State here has consented to suit in state court for federal civil rights actions.").

Accordingly, since the State of Washington and WSLCB are not proper defendants for Section 1983 suits, Mr. Feick's constitutional claims against them fail as a matter of law. The claims against the State and WSLCB are DISMISSED with prejudice.

**B.     The Court dismisses all federal constitutional claims against Rick Garza and Willian Lukela in their official capacity.**

"State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Off. Eng. v. Ariz.*, 520 U.S. 43, 69 n.24 (1997). This is because "[a]lthough 'state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office.' As such,

ORDER GRANTING MOTION TO DISMISS - 8

it is no different from a suit against the State itself." *Hafer v. Melo*, 502 U.S. 21, 26 (1991); *see Buffin v. California*, 23 F.4th 951, 962 (9th Cir. 2022) ("When sued in their official capacity, these government agents and representatives enjoy the same immunities and are held liable under the same standards as the government entities they represent."); *Cast v. Ct. Exec. Officer of Sonoma Cnty. Superior Ct.*, 786 F. App'x 721 (9th Cir. 2019) ("The Eleventh Amendment bars suits against State officials acting in their official capacities.").

Here, to the extent that Mr. Feick is suing Garza and Lukela in their official capacity as Directors of WSLCB, they are not proper defendants for Section 1983 suits seeking damages. Accordingly, Mr. Feick's claims against Garza and Lukela in their official capacity are DISMISSED with prejudice.

**C.     The Court dismisses all claims against Rick Garza and Willian Lukela in their personal capacity.**

In response to Defendants' motion to dismiss, Mr. Feick maintained that he is suing Garza and Lukela in their personal capacity. Dkt. 25 at 17. Mr. Feick, however, fails to allege any action taken by Garza and Lukela to violate his constitutional rights. *See generally* Dkt. 20.

To state a claim for relief under Section 1983, a plaintiff must show: (1) that he or she suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the causation requirement of Section 1983, a plaintiff must demonstrate that a defendant caused the alleged deprivation by doing an affirmative act, participating in another's affirmative act, or failing to perform an act which he or she was legally required to do. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citation omitted).

A Section 1983 "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under Section 1983." *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citation omitted). A supervisor may, however, be held liable under Section 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

Here, Mr. Fieck does not allege that Garza or Lukela took any action. The only references to Garza and Lukela include a conclusory statement that they "fail[ed] to perform [] WA 502 Initiative legislative mandate to license and regulate licensee applicants and participants" and a description of their positions as Directors of WSLCB. Dkt. 20 at 1–2, ¶¶ 11–12. For example, Garza is described as "WSLCB Agency Director from June 2013 until July 9, 2023" who has "testified numerously, making many public statements about the requirements of robust agency regulation and the enforcement of the Cole Memo." *Id.* ¶ 11. Mr. Feick notes that "Garza is fully aware of the singular achievements that Feick produced and contributed to the WSLCB I-502 between 2013 and 2016 that directly affected the historical evolution of the WSLCB 1-502 licensing, regulation, testing, tracking, packaging, producer, processor, and retail sale processes and procedures that exist to this day." *Id.* Lukela is described only as "the director of the WSLCB before, during and after the ruling in *Peridot Tree WA Inc. v. Wash. State Liquor & Cannabis Control Bd.*" *Id.* ¶ 12.

One conclusory allegation of liability is insufficient to plead that Garza or Lukela caused any deprivation of a constitutional right. *See* Dkt. 20 at 1–2; *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976) (liability for damages under Section 1983 is imposed "only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."). And descriptions of Defendants' positions as Directors of WSLCB do not state a claim under Section 1983 because vicarious liability cannot be imposed on the supervisor for actions committed by lower officials. *See Lemire*, 726 F.3d at 1075.

In response, Mr. Feick argues that Garza and Lukela "failed to train whoever the WSLCB employee was that decided a marijuana company in Washington State could operate with an owner from California for years." Dkt. 25 at 19. He further contends that Garza and Lukela failed to train WSLCB employee Nicola Reid "to understand that the sole jurisdiction of marijuana licensing and review of final agency actions was under the APA" and that Reid "should have deferred to the board under WAC 314-42-010 (4) (b), because she did not have the authority to decide whether to suspend or revoke a license, and she should have known the Superior Court did not have the authority either." *Id.* at 20.

Mr. Feick's argument is unpersuasive for two reasons. First, his failure-to-train arguments do not cite to and are not supported by any factual allegations in his complaint. *See generally* Dkt. 20. Second, they do not meet the pleading standard for supervisory liability based on failure to train. Under Section 1983, supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint was made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Hyde v. City of Wilcox*, 23 F.4th 863, 874 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)). "To prevail on a claim of supervisory liability for failure to train, the plaintiff must show that the official was

ORDER GRANTING MOTION TO DISMISS - 11

'deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights.'" *Id.* (quoting *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014)). "Under this standard, the plaintiff must allege facts to show that the official disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." *Id.* (citation modified). Mr. Feick's failure to train allegations—even if they appeared in his complaint—are conclusory and do not meet this standard.

Since Mr. Feick has not alleged that Garza or Lukela personally participated in any of WSLCB's responses to his complaint, and has not alleged any facts that would support a theory of failure to train, the Court DISMISSES all federal claims against Garza and Lukela. Although these pleading failures could potentially be cured by the allegation of other facts, because Mr. Feick's claims are also barred by the statute of limitations, the Court will not allow leave to amend.

**D.    Mr. Feick's claims are otherwise barred by the statute of limitations.**

Defendants also contend that the Section 1983 claims should be dismissed because they are subject to a three-year statute of limitations. Dkt. 21 at 9. Since Mr. Feick filed his complaint on July 25, 2024, Defendants assert that any claims arising before July 25, 2021 have expired. *Id.* Defendants argue that here, the "complained-of-injury—the involvement of an out-of-state resident in the operations of Green Harvest, by virtue of his position as trustee of one of the company's shareholders—began on June 12, 2019, and ended one week later when the state court appointed a receiver over the company." *Id.* (citing Dkt. 20 ¶ 19). And "[t]o the extent Mr. Feick claims instead that he was injured by WSLCB's inaction," Defendants argue that "Mr. Feick knew or should have known by no later than August 24, 2020, that WSLCB did not intend to complete an investigation or take any licensing action against Green Harvest or its

ORDER GRANTING MOTION TO DISMISS - 12

shareholders while the company remained under the supervision of Grays Harbor County Superior Court." *Id.* (citing Dkt. 20 ¶ 41). Since Mr. Feick did not sue until "nearly four years later," Defendants argue that the suit is untimely and must be dismissed. *Id.*

Mr. Feick does not meaningfully dispute that the statute of limitations has expired but argues only that he is entitled to equitable tolling. Dkt. 25 at 22. Mr. Feick first contends that he "was required to exhaust his administrative remedies prior to filing a judicial review of a final agency action under the APA." *Id.* But because WSLCB never provided "a final reviewable agency action decision letter by mail," and "failed to send a single document" in response to his public records request, Mr. Feick argues that the statute of limitations should be tolled. *Id.* at 22–23. He also asserts that "Defendants acted in bad faith by withholding its final agency action and improperly delegating its authority to regulate marijuana licenses under RCW 69.50 to a Superior Court resolving a receivership issue[.]" *Id.* at 25. By withholding any decision based on the state court outcome, Mr. Feick argues that Defendants engaged in "intentional misconduct by . . . interfer[ing] with his timely filing under the APA." *Id.*

In their reply, Defendants contend that Mr. Feick has not established the grounds for equitable tolling. Dkt. 27 at 6. Defendants assert that Mr. Feick's argument that the statute of limitations should not run until he received a final agency action is premised on a misunderstanding of the relief available under state law. *Id.* at 7–8. They argue that Washington law provides a way to seek judicial review of a state agency's unlawful failure to act. *Id.* at 7. RCW 34.05.570(4)(b) provides:

> A person whose rights are violated by an agency's failure to perform a duty that is required by law to be performed may file a petition for review pursuant to RCW 34.05.514, seeking an order pursuant to this subsection requiring performance. Within twenty days after service of the petition for review, the agency shall file and serve an answer to the petition, made in the same manner as an answer to a complaint in a civil action. The court may hear evidence, pursuant to RCW 34.05.562, on material issues of fact raised by the petition and answer.

ORDER GRANTING MOTION TO DISMISS - 13

RCW 34.05.570(4)(b). Because Mr. Feick could have filed an action in state court without any action from WSLCB, Defendants argue that he did not exercise diligence required for equitable tolling. Dkt. 27 at 8.

Defendants next argue that Mr. Feick failed to explain how WSLCB's lack of action on his complaint "impeded him from discovering his injury" or "deceived him into delaying the commencement of this suit for damages." *Id.* at 9. They also contend that permitting Mr. Feick's claim to proceed is "inconsistent with the purpose of the statute of limitations in providing finality and promoting timely resolution of disputes." *Id.* at 9–10. Finally, Defendants maintain that dismissing Mr. Feick's untimely suit is not unjust because he was fully aware of the operative facts in his complaint during the entire three-year statute of limitation period. *Id.* at 10.

Without evaluating the merits of Mr. Feick's constitutional claims, the Court finds that they are barred by the statute of limitations. "Section 1983 does not contain its own statute of limitations" and the federal courts "apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling." *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citation modified). In Washington, "the catch-all three-year limitations period for any other injury to the person or rights of another contained in R.C.W. 4.16.080(2) applies to § 1983 claims." *Bos. v. Kitsap Cnty.*, 852 F.3d 1182, 1185 (9th Cir. 2017). The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (citation omitted).

Mr. Feick did not initiate this suit until July 25, 2024—five years after Krohn replaced Pat Brutsche as successor trustee and four years after WSLCB informed Mr. Feick it was not going to respond to his complaint until the related state court case resolved. *See* Dkt. 1; Dkt. 20

ORDER GRANTING MOTION TO DISMISS - 14

¶¶ 25, 41. Mr. Feick claims only that his "public records request for information in March of 2022" proves that he "did not know of his rights and the extent of his injury as of March 2022." Dkt. 25 at 24. But by August 24, 2020, Mr. Feick was informed by WSLCB that it would not proceed in its investigation of his complaint until his challenge to GHC's liquidation was resolved in state court. Dkt. 20 ¶ 41 ("I wanted to follow up and let you know I have been in receipt of all the documents you have sent forth and I am waiting until a decision is made through the courts."). Even if Mr. Feick did not know, he had "reason to know" that WSLCB would not promptly investigate his complaint and its response would depend on the outcome in state court. *See Bird*, 935 F.3d at 743.

Still, Mr. Feick argues that he is entitled to equitable tolling because "he was barred from acting until he had obtained the right to administratively challenge a final agency action[.]" Dkt. 25 at 24. As with the statute of limitation period, the Court applies Washington's law on equitable tolling. *See Butler*, 766 F.3d at 1198 (federal courts "apply . . . the forum state's law regarding tolling, including equitable tolling").

Equitable tolling in civil suits is an "extraordinary form of relief" that is to be used "sparingly." *Fowler v. Guerin*, 200 Wn.2d 110, 118–19, 515 P.3d 502 (Wash. 2022). To justify its application, the proponent must demonstrate that "(1) the plaintiff has exercised diligence, (2) the defendant's bad faith, false assurances, or deception interfered with the plaintiff's timely filing, (3) tolling is consistent with (a) the purpose of the underlying statute and (b) the purpose of the statute of limitations, and (4) justice requires tolling the statute of limitations." *Id.* at 125. "Washington courts must evaluate each part of this standard in light of the particular facts of each case and should equitably toll the applicable statute of limitations only when all four parts of the . . . standard are satisfied." *Id.* "The party asserting that equitable tolling should apply bears the burden of proof." *Price v. Gonzalez*, 4 Wn. App. 2d 67, 75, 419 P.3d 858 (2018).

ORDER GRANTING MOTION TO DISMISS - 15

Here, Mr. Feick has not pled sufficient facts demonstrating that equitable tolling should apply. *See Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010) (even though pro se pleadings are liberally construed, a plaintiff must still present factual allegations sufficient to state a plausible claim for relief). First, Mr. Feick has not shown that he exercised diligence in bring his suit. *See Fowler*, 200 Wn.2d at 119. Mr. Feick's main argument in support for tolling is that under Washington's Administrative Procedure Act, he could not file a suit in court without exhausting his administrative remedies, which required a final agency decision. *See* Dkt. 25 at 24. But as Defendants correctly point out, Mr. Feick could have filed a petition in state court to compel WSLCB to investigate his complaint. *See* RCW 34.05.570(4)(b). More importantly, actions brought under Section 1983 do not require the exhaustion of administrative remedies, and Mr. Feick could have filed this lawsuit whether he received a final agency decision or not. *Porter v. Nussle*, 534 U.S. 516, 523 (2002) ("Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court.").

Second, Mr. Feick failed to demonstrate that Defendants interfered in bad faith with his efforts to bring this suit. *See Fowler*, 200 Wn.2d at 119. WSLCB represented its intent not to investigate his complaints, which put Mr. Feick on notice of his potential injury. *See* Dkt. 20 ¶ 41. WSLCB proceeded to then follow through on that representation. *See id.* ¶ 42. Mr. Feick has not presented any facts that show WSLCB made false assurances or deceptive statements. *See id.* Conclusory allegations that WSLCB engaged in "intentional misconduct" are insufficient to demonstrate that Mr. Feick is entitled to equitable tolling. *See Hebbe*, 627 F.3d at 341–42. Because the statute of limitations for Mr. Feick's claims have passed and he has not demonstrated that equitable tolling is warranted, the Court GRANTS the motion to dismiss.

**E.      Leave to amend is futile.**

The Court declines to grant Mr. Feick leave to amend his dismissed claims. When assessing the propriety of leave to amend, courts consider five factors: bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). While pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," amendment will not be allowed if it would be futile. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Here, amendment would be futile because Mr. Feick's claims are barred by the Eleventh Amendment and the statute of limitations, and the addition of new allegations to his remaining claims would not make those claims timely or viable. *See Corinthian Colls.*, 655 F.3d at 995 ("[D]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.") (citation modified); *cf. Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (granting leave to amend where court could "conceive of facts" that would render plaintiff's claim viable). Accordingly, the Court will not grant Mr. Feick leave to amend.

## V.      CONCLUSION

For the reasons explained above, Defendants' motion to dismiss (Dkt. 21) is GRANTED and Mr. Feick's claims are DISMISSED with prejudice. The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 1st day of October, 2025.

Tiffany M. Cartwright
United States District Judge